(75 South. 566)

BIRCH v. WARD et al. (6 Div. 438.)

(Supreme Court of Alabama. April 5, 1917. Upon Rehearing, May 24, 1917.)

1. MUNICIPAL CORPORATIONS ☞591—ABATEMENT OF NUISANCE — DELEGATION OF AUTHORITY.

Under the act providing for a commission form of government for the city of Birmingham, which provides that the act shall not be construed to prevent the board of commissioners from delegating or assigning to its boards, officers, · or employés the performance of executive and judicial powers and duties if done by resolution, by-law, or ordinance duly enacted, and an ordinance enacted thereunder defining the duties of the building inspector, an agent of the city had authority to act for the city in tearing down a house belonging to plaintiff, which constituted a nuisance, since, the act being ministerial, it could be delegated to an agent or official of the city by general ordinance or authorization, and need not have been by special ordinance, to do the specific thing.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1310.]

2. MUNICIPAL CORPORATIONS ☞591—ABATEMENT OF NUISANCE—UNAUTHORIZED ACT OF OFFICIAL—RATIFICATION.

If an agent of a city did not have authority to abate a nuisance by tearing down a house belonging to plaintiff, the act of the agent was ratified by the city by paying him for doing the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1310.]

Upon Rehearing.

3. NUISANCE ☞85 — PUBLIC NUISANCE — ABATEMENT—MODE AND EXTENT OF ABATEMENT.

It is the duty of a city official to remove or abate a nuisance in a reasonable way, so that if the condition of a building could have been abated or removed without total destruction, and the cost would have been less than the value of the property, the cause should have been removed without destroying the building; but even if it could have been removed without destruction of the building, and the cost of removal more than the building was worth, defendant would not be liable for removing or tearing down the building.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 200.]

4. TRIAL ☞253(8) — ELLIPTICAL — INSTRUCTIONS.

In an action for trespass by a city official in tearing down a house as a nuisance, a refused charge that if the jury believe from the evidence the defects if they existed could have been cured by repairing the building, and that in that event the defendants were not authorized to destroy such building even if at the time of its destruction it was in use, if not·otherwise bad, was elliptical.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620.]

5. TRIAL ☞253(8)—INSTRUCTIONS—IGNORING FACTS.

A refused instruction that, if the jury believe from the evidence that the building which was destroyed by defendants could have been placed in a safe condition by repairing it, defendants were not authorized to demolish said building, even if it was in an unsafe condition at the time of its destruction, was bad for hypothesizing only one of the facts constituting a nuisance and because it pretermits the unsanitary condition· of the building.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620.]

6. TRIAL ☞253(8)—INSTRUCTIONS—IGNORING FACTS.

A charge which instructed a finding for the plaintiff upon facts hypothesized, and which pretermits the fact that the building was at the time worth more than it would have cost to put it in a safe and sanitary condition, and instructs a finding for plaintiff although the cost of repair and sanitation may have cost more than the worth of the building, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620.]

Appeal from City Court of Birmingham; John H. Miller, Judge.

Action by Allie C. Birch against Geo. B. Ward and others for trespass to realty. Judgment for defendants, and plaintiff appeals. Affirmed.

The case made by the pleadings and the facts sufficiently appears in the opinion. The following charges were refused plaintiff:

(A) If you believe from the evidence that defendants caused plaintiff's building to be torn down, and she was damaged as a proximate consequence of such tearing down, you will find for plaintiff.

(B) Affirmative charge to find for plaintiff as against both defendants.

(C) General affirmative charge for plaintiff.

(18) The court further charges the jury that if they believe from the evidence that the defects, if they believe that defects existed, could be cured by repairing the building, that in that event defendants were not authorized to destroy such building, even if the building at the time of its destruction was in use.

(19) The court further charges the jury that if they believe from the evidence that the building which was destroyed by defendants could have been placed in a safe condition by repairing the same, then defendants are not authorized, under the law, to demolish said building, even if such building was in an unsafe condition at the time of its destruction.

(20) The court further charges the jury that if a nuisance existed on the premises of defendant, due either to an unsanitary condition of the premises, or to an unsafe condition of the building, that the city of Birmingham could have abated such nuisance or nuisances by removing the cause of the unsanitary condition, or repairing the building, or strengthening its foundation, and assessed the cost of such abatement against the property; and if they believe from the evidence that any nuisance which may have existed at the time of the destruction of the building could have been abated by the removal of the cause of obnoxious odors or smells, or by the repair of the building, or any portion thereof, then they must find for plaintiff as against both of the defendants.

Mr. Ward was president of the board of city commissioners of the city of Birmingham, and as such officer had charge of the matter in hand, and employed Mr. Bostick, the other defendant, to remove the building.

Banks, Deedmeyer & Birch and C. C. Nesmith, all of Birmingham, for appellant. M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellees.

ANDERSON, C. J. This was an action of trespass against the defendants for tearing down a house belonging to the plaintiff, the defense being that said house constituted a nuisance, and that the defendants acted under the authority of and in behalf of the city of Birmingham, and the jury found that it was a nuisance. Indeed, the argument of counsel of the chief legal questions is upon the hypothesis that the house was a nuisance at the time of its destruction.

[1] As to whether or not the municipality, the city of Birmingham, had the authority, under the common law, to abate nuisances, and whether or not it could do so by removing or destroying same, or whether or not the right went to public as distinguished from private nuisances, we are not concerned, as the statute gives this right as to all nuisances. Sections 1264, 1278, Code 1907. In fact, the appellant's counsel do not seriously question the authority of the city, but contend that this authority could not be delegated or authorized except by an ordinance. The act being ministerial, we think that it could be delegated to an agent or official of the city by general ordinance or authorization, and need not have been by a special ordinance to do the specific thing. While the act providing for the commission form of government for the city of Birmingham attempts to define the duties of the commissioners, respectively, it contains a general clause which reads as follows:

"This provision shall not be construed however so as to prevent the said board from delegating or assigning to one or more of its boards or to such boards, commissions, officers or employés as may be created or selected by it, the performance of such executive and judicial powers and duties as may be necessary or convenient, provided the same is done by resolution, by-law or ordinance duly enacted according to the terms of this act."

[2] In pursuance to this authority it appears that Ordinance 27–C was adopted. Section 1 provides for a general division of the powers; section 3 prescribes the duties of the head of each department, and gives the commissioners, respectively, the supervision and control over all subordinates belonging to their departments; and section 4 defines the duties and the authority of the department over which the defendant, Geo. B. Ward, presided, and which included the building inspector. This court takes judicial notice of the said ordinance. Section 7, Acts 1915, p. 294. We not only think that the defendant, Ward, had the authority to act for the city in the abatement or the destruction of the nuisance; but, if such was not the case, the act of Bostick in tearing down the building was ratified by the city in paying him for doing the identical thing. If this house was not a nuisance, and there was a suit against the city for destroying same, we hardly see how it could escape liability under the facts disclosed, upon the theory that Ward and Bostick had no authority to act for and were not in fact acting in its behalf.

We also think that the defendants showed a substantial compliance with the building code in and about the destruction of the building. The foregoing sufficiently disposed of groups 1 and 2 of the assignments of error as well as group 4.

Group 3 of the assignments of error relates to the plaintiff's refused charges. The bill of exceptions recites:

"The following written charges were requested by the plaintiff and refused by the court."

This recital would indicate that the charges were not only asked in bulk, but were also refused in bulk, as there is nothing to indicate that they were acted upon separately and severally. Therefore, unless all of said charges were good, the trial court cannot be put in error. Southern R. R. v. Douglass, 144 Ala. 351, 39 South. 268; Verberg v. State, 137 Ala. 73, 34 South. 848, 97 Am. St.

Rep. 17; Suell v. Derricott, 161 Ala. 261, 49 South. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Stowers Co. v. Brake, 158 Ala. 639, 48 South. 89. It is sufficient to say that charges A, B, and C were manifestly bad.

The judgment of the city court is affirmed. Affirmed.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

### Upon Rehearing.

ANDERSON, C. J. In dealing with plaintiff's refused charges, we adopted the suggestion in brief of appellees' counsel, and applied the old rule, inadvertently overlooking the fact that this case was tried subsequent to the Act of 1915, p. 815, providing that the charges may appear in the record proper, with the presumption that they were separately and severally requested, and as they appear in the record proper they seem to have been refused separately and severally, irrespective of the presumption provided in the act.

[3] It may be conceded that it was the duty of the defendants to remove or abate the nuisance in such a reasonable way as to result in as little damage to the plaintiff as possible. For instance, if it was due to an unsanitary or unsafe condition, one or both, which could have been abated or removed without the total destruction of the building, and the cost of which would have been less than the then value of the property, the cause should have been removed without destroying the building. On the other hand, even though the cause could have been removed without the destruction of the building, it may have cost more to do so than the building was worth, and, if such was the case, the defendants would not be liable for removing or tearing down the house.

Charge 17, refused the plaintiff, whether good or not, was cured by her given charge 16.

[4] Charge 18, refused plaintiff, if not otherwise bad was elliptical.

[5, 6] Charge 19, refused the plaintiff, was bad for hypothesizing only one of the facts constituting the nuisance, as it pretermits the unsanitary condition of the building. Moreover, it was not the duty of the defendants to put the building in repair unless it was at the time worth more than the cost of repair.

Charge 20, refused the plaintiff, instructs a finding for the plaintiff upon the facts hypothesized, and pretermits the fact that the building was at the time worth more than it would have cost to have put same in a safe and sanitary condition, and instructs a finding for the plaintiff, although the cost of repair and sanitation may have cost more than the worth of the building.

The plaintiff's other refused charges were manifestly bad, and are covered by a decision of the questions decided in the original opinion and from which we do not recede.

The application for rehearing is overruled.